UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 05-20530-CIV-ALTONAGA/BANDSTRA

CITY OF CORAL GABLES
RETIREMENT SYSTEM,

      Plaintiff,

v.

INVESCO INSTITUTIONAL
(N.A.), INC.,

      Defendant.
_____/

NIGHT BOX
FILED
MAR 17 2005
CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

### INVESCO'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant INVESCO Institutional (N.A.), Inc. ("INVESCO") moves that this Court enter an order dismissing the plaintiff's Complaint for failure to state a claim upon which relief can be granted.

### MEMORANDUM OF LAW

I. **OVERVIEW**

The plaintiff's Complaint alleges two claims against INVESCO, one of the plaintiff's investment managers, with respect to INVESCO's October 2001 purchase of approximately $200,000 in Enron Corp. stock for the plaintiff's investment portfolio. As



demonstrated herein, the Court should dismiss both claims. The plaintiff's breach of contract claim should be dismissed because the plaintiff has failed to plead facts that constitute, as a matter of law, "gross or willful misconduct" by INVESCO, the liability standard set forth in the parties' Management Agreement. Plaintiff's breach of fiduciary duty claim should be dismissed because the claim is barred by the economic loss rule.

## II. STATEMENT OF FACTS

### A. The Parties' Management Agreement

The Complaint alleges the following facts germane to this Motion. The plaintiff is a public pension fund. (Complaint, ¶ 2). INVESCO provides investment management services to public pension funds. (Id., ¶ 3).

In 1975, the plaintiff and INVESCO (by their respective predecessors) executed a Management Agreement whereby INVESCO agreed to serve as one of the plaintiff's investment managers. (Id., ¶ 6). The plaintiff alleges that sometime "[p]rior to 2000," the plaintiff and INVESCO orally agreed that "INVESCO would adhere to the investment style that is known as Large Cap Value for the portion of the Investment Portfolio managed by INVESCO." (Id., ¶¶ 6, 9).

The Management Agreement, which is attached as Exhibit 1 to the Complaint, states in part:

> 1. (a) Principal [plaintiff] hereby employs Agent [INVESCO], and Agent hereby accepts such employment, to provide investment supervision and management of the securities, cash, real estate and other properties now or hereafter listed on an inventory provided Agent by Principal (the 'Assets'). The Assets shall be invested and reinvested by Agent in such bonds, notes, debentures, preferred or common stocks,

>   interests in real estate, other securities or other property as Agent in its sole discretion shall determine to be in Principal's best interest. . . .
>
>   2.   Agent will periodically review the securities, cash and other property held for Principal's account, and will retain, sell or exchange the same as Agent shall determine to be for Principal's best interest in Agent's sole discretion. . . .
>
>   4.   . . . Agent shall not be liable for any damages with respect to any matter in connection with this agency, <u>except for gross or willful misconduct by Agent</u>. Agent shall have no liability in connection with any act taken or omitted in good faith, and Principal agrees to hold Agent harmless from all liabilities and expenses incurred in connection herewith. [Emphasis added].

### B. **The Enron Stock Purchase Transaction**

In early May 2001, Enron stock was trading at $60 per share. (Complaint, ¶ 31). By late October 2001, the price of Enron stock had fallen significantly following a serious of adverse public disclosures concerning Enron's operating losses and business operations (see Complaint, ¶¶ 18-23), and publicized concerns about Enron that had been stated by various financial publications and securities analysts. (See id., ¶¶ 29-34).

On October 30, 2001, INVESCO purchased 19,000 Enron shares for the plaintiff at the price of $11.01 per share for a total purchase price of approximately $210,000. (Id., ¶ 35).[1] On November 8, 2001, approximately a week following that purchase, Enron announced that it had overstated its earnings over the past four years by $586 million, and that it was responsible for $3 billion in obligations that were never reported to the public. (Id., ¶ 26). Upon these disclosures, the price of Enron stock fell to $8.41 per share. (Id.). On November 9, 2001, a

---

[1] Earlier that year, INVESCO had purchased a total of 10,130 additional Enron shares for the plaintiff at the prices of $48.69 and $34.35 per share. (See Complaint, ¶ 35).

-3-

company named Dynegy offered a "rescue plan" for Enron and proposed a buy-out of all of Enron for $10 billion in stock. (Id., ¶ 27). On November 14, 2001, two weeks after INVESCO's October 30 stock purchase, the price of Enron stock closed at $10 (id., ¶ 36), just $1.01 less than the price paid by the plaintiff. In fact, through November 19, 2001, the price of Enron stock still traded for as much as $9 or $10 per share. (Id., ¶ 37).

On November 29, 2001, after the price of Enron stock had "sudden[ly] collapse[d]" (see id., ¶ 28), INVESCO sold all of the plaintiff's Enron stock for $0.40 per share. (See id., ¶ 36). This sale resulted in a loss in excess of $200,000 for the 19,000 shares that had been purchased on October 30, 2001. (Id.).

In support of its breach of contract and breach of fiduciary duty claims, the plaintiff alleges that "[t]his new [October 30] purchase was completely unsuitable for [the plaintiff], was not in the best interests of [the plaintiff], and was reckless at the time it was done." (Id., ¶ 35). The plaintiff further alleges that it "would have been prudent" for INVESCO to have sold the plaintiff's Enron stock "in the days following [Enron's] November 8, 2001 [announcements]," and that "[t]he decision not to sell at that time was based upon pure speculation, which is known as risk arbitrage, and was inconsistent with the best interests of the [plaintiff] and was inconsistent with the Large Cap Growth [sic] investment style." (Id., ¶ 37).

-4-

III. **ARGUMENT**

A. **Plaintiff's Breach of Contract Claim Should be Dismissed Because The Plaintiff Has Not Alleged Facts Constituting "Gross or Willful Misconduct"**

The Court should dismiss the plaintiff's Count I breach of contract claim because the plaintiff has not alleged facts constituting "gross or willful misconduct," as required by the parties' Management Agreement. At worst, the plaintiff asserts that INVESCO made an allegedly speculative investment that produced a sizable loss.

While there do not appear to be any Florida cases discussing a "gross or willful misconduct" standard in the context of an investment advisor's choice of securities, the definition of that standard, in the context of punitive damages claims, clearly demonstrates that INVESCO's alleged conduct does not begin to approach the standard.

As the U.S. Court of Appeals for the Fifth Circuit has stated:

> Recent decisions of this Court interpreting Florida law, as well as decisions of various state courts of Florida, have held that the essential elements of willful and wanton misconduct are '(1) the actor must have knowledge, actual or constructive, of the likelihood that his conduct will cause injury to other persons or property; and (2) the conduct must indicate a reckless indifference to the rights of others, that is, conduct which may be termed equivalent to an intentional violation of those rights.' Boyce v. Pi Kappa Alpha Holding Corp., 476 F.2d 447, 452 (5th Cir. 1978); Glaab v. Caudill, 236 So.2d 180, 184 n. 13 (Fla.D.C.A. 2, 1970).

Excel Handbag Co., Inc. v. Edison Brothers Stores, Inc., 630 F.3d 379, 384 (5th Cir. 1980). Accord Gulf Shore Seafood & Co. v. Cities Service Co., 501 F.2d 957, 958 (5th Cir. 1974) (same). The plaintiff's allegations concerning the circumstances of INVESCO's purchase of Enron stock for the plaintiff do not meet this standard under any guise.

Indeed, courts in other jurisdictions – applying comparable standards in similar contexts – have not hesitated to dismiss similar claims. For example, in Retty Financing, Inc. v. Morgan Stanley Dean Witter & Co., 740 N.Y.S. 2d 198 (N.Y. App. Div. 2002), the court affirmed the dismissal of a breach of contract claim arising out of the defendant brokerage firm's transfer of funds from the plaintiff's account at the request of a bankrupt principal. The court stated:

> The limitation of liability provision within the parties' contract, providing that defendant would be subject to liability only for gross negligence or willful misconduct in its management of the subject investment fund, was unambiguous and applicable to the instant matter. The allegations of the complaint fail to set forth actions by defendant evincing 'a reckless disregard for the rights of [plaintiff] or 'smack[ing]' of intentional wrongdoing' . . . .

Id. at 198.

Likewise, in Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 1537(MBM), 2003 WL 23018888 (S.D.N.Y. December 22, 2003), aff'd, No. 04-0622-CV, 2004 WL 2278573 (2nd Cir. Oct. 06, 2004), the court dismissed a breach of contract claim, based on alleged third party beneficiary rights, related to Citibank's purported failure to adequately supervise two investment funds marketed by Citibank. (See id. at *1 and *8). The Administrative Agreements between Citibank and the funds contained "a clause that limit[ed] [Citibank's] liability for claims arising under the Administrative Agreements to 'willful misfeasance, bad faith, gross negligence or reckless disregard of its, his or her duties and obligations.'" Id. at *8 and *11. As such, the Court ruled:

> Under the limited liability clause, [the plaintiff] can recover against Citibank for breach of duties arising under the Administrative Agreements only upon specific factual allegations of deliberate or bad faith conduct. . . . [P]laintiff alleges no specific 'actions by defendant evincing a reckless disregard for the rights of plaintiff or smacking of intentional

        wrongdoing.' At most, [the plaintiff] has alleged facts suggesting
        Citibank acted negligently, but negligence is not adequate to overcome the
        limited liability clause.

Id. at *12 (citation omitted).

    The same result is appropriate here. The plaintiff simply has not alleged any facts to suggest that INVESCO's October 30, 2001 purchase of Enron stock for the plaintiff, and its decision to hold that stock until November 29, 2001, were made with the knowledge that such actions would cause injury to the plaintiff, or "smacked" of intentional wrongdoing. In fact, the plaintiff concedes that the price of Enron stock stayed fairly level during the three week period following INVESCO's purchase of the stock. (See Complaint, ¶¶ 35-37). The plaintiff also concedes that while Enron made a November 8, 2001 announcement that it had overstated earnings and was responsible for certain obligations that were not previously reported (id., ¶ 26), another company offered a potential "rescue plan" for Enron the very next day. (Id., ¶ 27).

    While the plaintiff alleges that it would have been "prudent" for INVESCO to have sold the Enron stock prior to Enron's ultimate collapse (id., ¶ 37), a lack of prudence is not tantamount, as a matter of law, to "gross or willful misconduct." The Court should dismiss Count I.[2]

---

[2] To the extent that the plaintiff also alleges that the parties orally modified their written contract to provide that INVESCO would purchase "Large Cap Value stocks" (Complaint, ¶ 9), that agreement still would be subject to the "gross or willful misconduct" standard set forth in the parties' Management Agreement. (See Agreement, § 7, providing that "[t]he terms of this Agreement may be altered, amended or changed from time to time by mutual consent"). Moreover, the Complaint does not allege why INVESCO's purchase of Enron stock at a depressed price from its prior levels was inconsistent with INVESCO's alleged oral agreement to purchase "Large Cap Value stocks" for the plaintiff.

B.  **The Plaintiff's Breach of Fiduciary Duty Claim
Is Barred by Florida's Economic Loss Rule**

1.  **Subject to Exceptions Not Applicable to This Matter, The
Economic Loss Rule Bars Tort Actions to Recover Solely
Economic Damages For Those in Contractual Privity**

The Court should dismiss the plaintiff's Count II breach of fiduciary duty claim as barred by Florida's economic loss rule, because the plaintiff and INVESCO are in contractual privity, and because the economic loss rule bars tort actions to recover solely economic damages between such parties, subject to certain exceptions that are not applicable here.

On December 23, 2004, the Florida Supreme Court issued its opinion in Indemnity Insurance Co. v. American Aviation, Inc., 891 So. 2d 532 (Fla. 2004), a decision that governs this action, and which discusses the economic loss rule in considerable detail. In Indemnity Insurance, the Court held that the economic loss rule "bars a negligence action to recover solely economic damages only in circumstances where the parties are either in contractual privity or the defendant is a manufacturer or distributor of a product, and no established exception to the application of the rule applies." Id. at 534 (emphasis added) (holding that the economic loss rule did not apply to allegations of negligent maintenance and inspection of an aircraft's landing gear, when asserted by a plaintiff not in contractual privity with the defendant).

In so ruling, the Supreme Court extensively reviewed the history and purpose of the economic loss rule, stating:

> The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort. *See, e.g., Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So.2d 490, 494 (Fla. 3d DCA

-8-

007.162125.1

> 1994) ('Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort.'). Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of non-performance through the bargaining process. A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. <u>Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.</u> *See, e.g., Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So.2d 518, 519 (Fla. 3d DCA 1986) (stating that 'breach of contract, alone, cannot constitute a cause of action in tort ... [and][i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence'); *Weimar v. Yacht Club Point Estates, Inc.*, 223 So.2d 100, 103 (Fla. 4th DCA 1969) ('[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract.').

Id. at 536-37 (emphasis added). The court noted that as established exceptions to this rule, parties in privity of contract still may recover in tort for economic damages where a tort, such as fraud in the inducement, was "committed independently of the contract breach," id. at 537; or where a plaintiff alleges "neglect in providing professional services." Id.

Neither exception is applicable here. As to the first exception, a tort is committed independently of a contractual breach when "it requires proof of facts separate and distinct from the breach of contract." Id. at 537 (quoting <u>HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.</u>, 685 So. 2d 1238, 1239 (Fla. 1996)). See also <u>Excess Risk Underwriters, Inc. v. LaFayette Life Insurance Co.</u>, 208 F. Supp. 2d 1310, 1318 (S.D. Fla. 2002) (the economic loss rule "bars tort claims that are based on actions inextricably intertwined with the acts constituting the breach of contract"). Accordingly, here, where the plaintiff's Count II breach of fiduciary duty claim "adopt(s) and reallege(s)" the same factual allegations made in support of the plaintiff's Count I

breach of contract of claim (Complaint, ¶ 42), the plaintiff's breach of fiduciary duty claim indisputably is "inextricably intertwined" with the acts constituting INVESCO's alleged breach of contract, and therefore does not constitute an "independent tort."

The second exception, the "professional services" exception, was established by the Florida Supreme Court in Moransais v. Heathman, 744 So. 2d 973 (Fla. 1999). There, the Court defined a "profession" as "any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida." Id. at 976 (citation omitted). As such, the "professional services" exception does not apply to an investment management firm like INVESCO. See, e.g., Medalie v. FSC Securities Corp., 87 F. Supp. 2d 1295, 1302 (S.D. Fla. 2000) ("a securities broker is not required to obtain a four year degree for licensing in Florida"); Warter v. Boston Securities, S.A., No. 03-81026-CIV/RYSKAMP, 2004 WL 691787, at *13 (S.D. Fla. March 22, 2004) ("a securities broker is not a 'professional' for purposes of the economic loss rule because securities brokers are not required to obtain a four-year degree for licensing in Florida").

Therefore, because the plaintiff seeks to recover solely economic damages from INVESCO, a party with whom the plaintiff is in contractual privity, the economic loss rule bars the plaintiff's breach of fiduciary duty claim.

2. **Pre-Indemnity Insurance Decisions, Applying Dicta from the Moransais Opinion To Permit Breach of Fiduciary Duty Claims, are Incorrect in Light of Indemnity Insurance**

This result is not changed by dicta from the Moransais decision which certain courts incorrectly applied – following the issuance of that opinion, but prior to the issuance of the Indemnity Insurance decision – to generally permit breach of fiduciary duty claims between parties in contractual privity. See Indemnity Insurance, 891 So. 2d at 542 ("Although we limited

-10-

007.162125.1

our holding in Moransais to situations involving professional malpractice, we note that some courts have extended the exception to the application of the economic loss rule created in Moransais to causes of action for breach of fiduciary duty, even if there was an underlying oral or written contract").

In Moransais, the Florida Supreme Court stated, in dicta, that the economic loss rule:

> was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis. We hesitate to speculate further on situations not actually before us. The rule, in any case, should not be invoked to bar well-established causes of action in tort, such as professional malpractice.

Moransais, 744 So. 2d at 983. Interpreting this language, some courts subsequently ruled that "the Moransais opinion makes it quite clear that the economic loss rule has not abolished the cause of action for breach of fiduciary duty, even if there is an underlying oral or written contract." See First Equity Corp of Florida, Inc. v. Watkins, Nos. 98-851, 98-589, 1999 WL 542639, at *1 (Fla. 3rd DCA July 28, 1999).

However, the Indemnity Insurance decision clearly demonstrates that the First Equity Corp. decision, and its progeny, were incorrect. As the Florida Supreme Court expressly stated in Indemnity Insurance:

> [W]e reiterate that when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss.

Indemnity Insurance, 891 So. 2d at 542.

In light of this language, the economic loss rule bars (and continues to bar) breach of fiduciary duty claims between plaintiff investors and defendant brokers or investment advisors

who are contractual privity, as the Eleventh Circuit ruled almost 15 years ago. See <u>Interstate Securities Corp. v. Hayes Corp.</u>, 920 F.2d 769, 777 (11th Cir. 1991). See also <u>Medalie</u>, 87 F. Supp. 2d at 1304 ("declin[ing]", even prior to the <u>Indemnity Insurance</u> decision, "to depart from the established Eleventh Circuit precedent in <u>Hayes</u> and hold[ing] that the economic loss rule bars plaintiffs' breach of fiduciary duty claims"). Accord <u>Excess Risk Underwriters</u>, 208 F. Supp. 2d at 1318 ("[the plaintiff's] claim for breach of fiduciary duty is barred because [the plaintiff's] complaint specifically states that [the defendant's] fiduciary duties arose from the agreements at issue in this case"); <u>Florida State Board of Administration v. Law Engineering and Environmental Services, Inc.</u>, 262 F. Supp. 2d 1004, 1017-18 (D. Minn. 2003) ("plaintiff's breach of fiduciary duty claim against defendant is barred by the economic loss doctrine because, as discussed, plaintiff's breach of fiduciary duty claim is dependent upon the contract between the parties and because the facts establishing the breach of fiduciary duty claim are interwoven with the contract claim") (applying Florida law).

007.162125.1

IV.     **CONCLUSION**

For the foregoing reasons, INVESCO respectfully requests that the Court dismiss the plaintiff's Complaint.

**I HEREBY CERTIFY** that a true and accurate copy of this INVESCO's Motion to Dismiss has been furnished by U.S. mail to CURTIS CARLSON, PAYTON & CARLSON, P.A., 1200 Suntrust International Center, One Southeast Third Avenue, Miami, Florida 33131, this 17th day of March, 2005.

Richard S. Davis
Florida Bar No. 991082
FOLEY & LARDNER LLP
777 South Flagler Drive
Suite 901 -- West Tower
West Palm Beach, Florida  33401
Telephone:     (561) 650-0140
Facsimile:     (561) 655-6925
E-mail:        rdavis@foley.com

James M. Landis
Florida Bar No. 0116760
FOLEY & LARDNER LLP
100 North Tampa Street
Suite 2700
Tampa, Florida  33602
Telephone:     (813) 229-2300
Facsimile:     (813) 221-4210
E-mail:        jlandis@foley.com

*Attorneys for defendant*
*INVESCO Institutional (N.A.), Inc.*

007.162125.1