UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-20530-CIV-ALTONAGA
Magistrate Judge Bandstra

CITY OF CORAL GABLES RETIREMENT
SYSTEM,

          Plaintiff,

vs.

INVESCO INSTITUTIONAL
(N.A.), INC.

          Defendant.

_____/



## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION TO DISMISS

      Plaintiff, City of Coral Gables Retirement System (the "Retirement System"), by undersigned counsel, hereby responds to the motion to dismiss filed by Defendant Invesco Institutional (N.A.), Inc. ("Invesco"), as follows:

### INTRODUCTION

      The Retirement System was established to provide retirement benefits to its participants pursuant to Chapter 19 (56), Code of the City of Coral Gables, Florida (the "Code"), Retirement Board Ordinance No. 2887, Ordinance No. 3217. The Retirement System is a defined benefit pension plan funded by (1) contributions by the City of Coral Gables, (2) employee contributions, and (3) investment income.

      Plaintiff hired Defendant Invesco as a Money Manager to manage a portion of its investment portfolio. Plaintiff has alleged that due to Defendant's actions, it lost a significant amount of money. Plaintiff has filed a two count complaint against Invesco alleging breach of

1



contract and breach of fiduciary duty.   Plaintiff attached a contract to the Complaint which *may* not be relevant to this case.[1]  For the purpose of the present motion, however, Plaintiff will assume that an agreement exists between the parties (although a significant question exists as to whether that is, in fact, accurate).

Defendant Invesco contends that the claims for breach of contract and breach of fiduciary duty cannot state a claim upon which relief can be granted.  Defendant contends the breach of contact claim should be denied because the agreement between the parties contains a provision limiting Invesco's liability to gross negligence and wilful misconduct and, according to Invesco, the allegations of the Complaint do not rise to that level.  Defendant contends the breach of fiduciary duty claim must be dismissed because, according to Defendant, such a tort is barred by the economic loss rule where an agreement exists between the parties.

As the Plaintiff will demonstrate, both grounds lack merit and the motion to dismiss should be denied.

## DISCUSSION

A.   **The Statutory Framework**.

The statutory framework is important as to both counts of the complaint. Defendant Invesco is a Money Manager in the statutory scheme. The Code defines money managers as "the person or entity appointed from time to time pursuant to section 19-79 for the purpose of investing and reinvesting the corpus, income, contributions and other monies received

---

[1]      The agreement is between a predecessor of Invesco and an entity with a name that is substantially different than the Retirement System's name.  At the time of filing the complaint, the undersigned assumed this entity was the Retirement System and that it had gone through a name change.  However, after further inquiry, it appears the Retirement System has never been known by a different name and the contract is *not* between the Plaintiff and the defendant.

2

by the system." Code § 19-32(21).

Under the Code, Money managers are fiduciaries. *See* Code § 19-41. They are "responsible for the investment and reinvestment of all assets of the system." Code § 19-80. The Money Managers are charged with "deciding on a proper investment" in view of the "purposes of the system, the system's financial needs such as liquidity, applicable laws and the system's investment policies and guidelines." *Id.* Each Money Manager is required to "provide assistance in the field of its expertise to the retirement board ... in the development, review and revision of the system's investment policies and guidelines." *Id.* Further, as discussed above, the Code expressly identifies Money Managers as fiduciaries and requires a Money Manager to "acknowledge in writing that he is a fiduciary with respect to the system." *Id.* §§ 19-41, 19-79(b)(4).

Chapter 112, Florida Statutes, is the Florida Protection of Public Employee Retirement Benefits Act. The provisions of the Act are applicable to the Plaintiff Retirement System. *See* Section 112.62 ("The provisions of this part are applicable to any and all units, agencies, branches, departments, boards, and institutions of state, county, special district, and municipal governments which participate in, operate, or administer a retirement system or plan for public employees, funded in whole or in part by public funds").

Under section 112.661, all assets of a retirement system must be invested in accordance with a written investment policy. "Such policies shall be structured to maximize the financial return to the retirement system or plan consistent with the risks incumbent in each investment and shall be structured to establish and maintain an appropriate diversification of the retirement system or plan's assets." *See* Section 112.661.

Section 112.661 also states that:

3

(4) INVESTMENT AND FIDUCIARY STANDARDS.--The investment policy shall describe the level of prudence and ethical standards to be followed by the board in carrying out its investment activities with respect to funds described in this section. The board in performing its investment duties shall comply with the fiduciary standards set forth in the Employee Retirement Income Security Act of 1974 at 29 U.S.C. s. 1104(a)(1)(A)-(C). In case of conflict with other provisions of law authorizing investments, the investment and fiduciary standards set forth in this section shall prevail.

29 U.S.C. § 1104 (a)(1)(B), which is part of ERISA, provides:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

The Code specifies the duties of a money manager as follows:

The money manager(s) shall be responsible for the investment and reinvestment of all assets of the system. In furtherance of this responsibility, the money manager(s) shall have all powers, duties and responsibilities with regard to such investment and reinvestment, and act as the system's agent(s) in fact with full authority to buy, sell or otherwise effect investment transactions involving the assets of the system in the name of the system, the trustee or the trust fund and for the system's account. Such powers, duties and responsibilities shall be exercised exclusively by the money manager(s) pursuant to and in accordance with those provisions of this article and any applicable law which relate to such powers, duties and responsibilities.

Code § 19-80. The applicable law referred to in this section would include the fiduciary standards in Section 112.661, Florida Statutes, and the prudent man standards contained in ERISA. 29 U.S.C. § 1104 (a)(1)(B).

B.     **The provisions of the agreement attempting to limit liability are void**.

Nothing in the statutory framework allows for the liability of fiduciaries to be

4

limited, altered or modified by the terms of a written management agreement.[2]  In fact the opposite is true.  Section 112.66(4), Florida Statutes, states that "[a]ny provision in a legal agreement, contract, or instrument which purports to relieve a fiduciary of a retirement system or plan from responsibility or liability is void as being against public policy."  And, so there is no doubt, section 112.62 provides that "[t]he provisions of this part supplement and, to the extent there are conflicts, prevail over the provisions of existing laws and local ordinances relating to such retirement systems or plans."[3]

Therefore, the provisions of the agreement which seek to limit the liability of Defendant Invesco are void.  As a result, the allegations of the complaint are sufficient to state a claim upon which relief can be granted and Defendant's motion to dismiss the breach of contract count must be denied.

Alternatively, the allegations of the complaint do rise to the level of gross negligence.  If this Court determines otherwise, leave should be given to file an amended complaint.

**C.    The breach of fiduciary duty count states a claim for relief.**

**1.    Introduction**

Defendant contends that since an agreement exists between the parties, all tort claims are barred by the economic loss rule.  Defendant further contends the recent decision of

---

[2]    This is in contrast to the statutory framework for a traditional trustee under a trust instrument.  The statute governing the standard of care of trustees, section 737.307, Florida Statutes, provides that the trust instrument may alter the duties existing under the statute.

[3]    Perhaps to make doubly sure there is no doubt, Section 112.67, Florida Statutes, provides that "[p]ursuant to s. 11(a)(21), Art. III of the State Constitution, the Legislature hereby prohibits special laws or general laws of local application in conflict with the requirements of this part."

5

the Supreme Court of Florida in *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So.2d 532, 29 Fla.L.Weekly S815 (Fla. 2004), makes it clear that a claim for breach of fiduciary duty cannot exist where a contract exists between the parties. The Defendant could not be more incorrect.

Before discussing *Indemnity Insurance*, it is important to first discuss *Invo Fla., Inc. v. Somerset Venturer, Inc.*, 751 So.2d 1263, 1266 (Fla. 3d DCA 2000) and *First Equity Corp. of Florida v. Watkins*, 24 Fla.L.Weekly D1758 (Fla. 3rd DCA 1999), where the Florida Third District Court of Appeal was faced with the issue of whether the economic loss rule bars a claim for breach of fiduciary duty where an agreement existed between the parties. In both cases, the court held that a breach of fiduciary duty claim is not barred by the economic loss rule even where a contract exists between the parties.

In *Invo Florida* the Third District held that:

> With respect to Count V against Landa and Ambrosio for breach of fiduciary duty, we hold that the economic loss rule has not abolished the cause of action for breach of fiduciary duty, even if there is an underlying contract. We believe that the Florida Supreme Court's decision in *Moransais v. Heathman*, 744 So.2d 973 (Fla.1999), governs here.

In *Moransais,* the Florida Supreme Court stated:

> Today, we again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action.... Rather, the rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis. We hesitate to speculate further on situations not actually before us. The rule, in any case, should not

PAYTON & CARLSON, P.A.
1200 SunTrust International Center, One Southeast Third Avenue, Miami, FL 33131 305.372.3500

> be invoked to bar well-established causes of actions
> in tort....
>
> *Id.* at 983 (footnote omitted).  Breach of fiduciary duty is one of
> those well-established torts. It is clear that the law imposes
> fiduciary duties on directors of dissolved corporations, such that
> they "are bound to exercise diligence and good faith in dealing with
> the properties of the corporation, to the end that the creditors'
> interests may be protected." (Citations omitted).  Thus, we believe
> that *Moransais* makes it clear that *the economic loss rule has not
> abolished the cause of action for breach of fiduciary duty, even if
> there is an underlying oral or written contract.* (Emphasis added).

Earlier in *First Equity*, the Third District extended the holding in *Moransais* to allow a claim for

breach of fiduciary duty in the securities context, despite the existence of an underlying contract,

because "[b]reach of fiduciary duty is just such a well-established cause of action in tort."  In

addition, the court explicitly stated that the Eleventh Circuit Court of Appeals' decision in

*Interstate Securities Corp. v. Hayes*, 920 F.2d 769 (11th Cir. 1991), could no longer be "regarded

as good law." *Id.* at n. 3.

In *Indemnity Insurance*, the Court discussed the history of the judicially created

economic loss rule, the distinction between the contractual privity economic loss rule and the

products liability economic loss rule, and the exceptions to each.  It noted that the purpose of the

contractual privity rule is to prevent a party from recovering more than it bargained to receive in

the event of a breach of the contract or nonperformance ("A party to a contract who attempts to

circumvent the contractual agreement by making a claim for economic loss in tort is, in effect,

seeking to obtain a better bargain than originally made").  As its example for this principle, the

court cited *AFM Corp. v. Southern Bell Telephone & Telegraph Co.*, 515 So.2d 180 (Fla. 1987),

where AFM's contract with Southern Bell "defined the limitation of liability."

In *Indemnity Insurance*, after reviewing the history of the rule, the Court held:

7

[W]e reiterate that when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss. Our holding in *AFM Corp.* illustrates this well-settled rule of law.

\* \* \*

We also affirm that in cases involving either privity of contract or products liability, the other exceptions to the economic loss rule that we have developed, such as for professional malpractice, fraudulent inducement, and negligent misrepresentation, or freestanding statutory causes of action, still apply (footnotes omitted).

We further conclude that, in general, actionable conduct that frustrates economic interests should not go uncompensated solely because the harm is unaccompanied by any injury to a person or other property. We therefore hold that cases that do not fall into either of the two categories articulated above (i.e. contract privity or products liability) should be decided on traditional negligence principles of duty, breach, and proximate cause. That said, we express no opinion on the existence of a cause of action or the appropriateness of recovery for certain types of economic damages in individual cases.

*Indemnity Ins.*, 891 So.2d at 543, 29 Fla.L.Weekly at S819. Earlier in the decision, the Court

discussed *Invo Florida* and its holding. The Court said:

In *Moransais*, we recognized the danger in an "unprincipled extension of the rule." 744 So.2d at 981. We stated that those situations in which this Court permitted recovery for purely economic loss, such as in the context of fraudulent inducement and negligent misrepresentation,

serve[d] as reminders of the distinct limitations of the economic loss rule. Today, we again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action, such as those for neglect in providing professional services. Rather, the rule was primarily intended to limit action on the product liability context or situations

8

> where the policy considerations are substantially
> identical to those underlying the product liability-
> type analysis.
>
> *Id.* at 983 (footnote omitted).  Although we limited our holding in
> *Moransais* to situations involving professional malpractice, we
> note that some courts have extended the exception to the
> application of the economic loss rule created in *Moransais* to
> causes of action for breach of fiduciary duty, *even if there was an
> underlying oral or written contract.  See Invo Fla., Inc. v. Somerset
> Venturer, Inc.*, 751 So.2d 1263, 1266 (Fla. 3d DCA 2000);
> *Performance Paint Yacht Refinishing, Inc. v. Haines*, 190 F.R.D.
> 699, 701 (S.D.Fla. 1999).

(emphasis added).  891 So.2d at 542, 29 Fla.L.Weekly at S819.  Thus, the Court had a chance to

limit or overrule *Invo Florida*, but did neither.  Instead, the Court set forth its holding that the

contract privity economic loss rule does not apply unless "the parties have negotiated remedies

for nonperformance pursuant to a contract."  Further, the Court stated that "we express no

opinion on the existence of a cause of action or the appropriateness of recovery for certain types

of economic damages in individual cases."

Based upon *Indemnity Insurance*, it is clear that Plaintiff has stated a claim upon

which relief can be granted for breach of fiduciary duty.  The reasons are: (1) the contract in this

case, unlike the contact in *AFM Corp.*, does not contain a valid limitation of liability, and

therefore the contractual privity economic loss rule does not apply, (2) the Supreme Court

acknowledged the decision in *Invo Florida* and left it untouched and therefore *Invo Florida*

remains the law of Florida, and a breach of fiduciary duty claim is not barred even where a

contract exists, and (3) in any event, the fiduciary duties alleged do arise independently from the

contract; they arise from Chapter 112, Florida Statutes, the Code, and ERISA.

9

2.      **The agreement does not contain
        <u>a valid provision limiting liability</u>**.

As noted above, the limitation of liability provision in the contract at issue in this

case is "void as being against public policy." Section 112.66(4), Florida Statutes. Under

*Indemnity Insurance*, in order for the contract privity economic loss rule to apply, there needs to

be a valid clause limiting the liability as was present in *AFM Corp*. A valid clause does not exist

in this case. Therefore, the economic loss rule cannot apply and cannot preclude a claim in tort

for breach of fiduciary duty in this particular case even though a contract exists.

3.      ***<u>Invo Florida</u> and <u>First Equity</u> are the law</u>***.

In *Indemnity Insurance* the Supreme Court did not overrule either *First Equity* or

*Invo Florida*. Most significantly, it discussed *Invo Florida*, noting that "some courts have

extended the exception to the application of the economic loss rule created in *Moransais* to

causes of action for breach of fiduciary duty, *even if there was an underlying oral or written

contract*." (Emphasis added). The court also said that "actionable conduct that frustrates

economic interests should not go uncompensated solely because the harm is unaccompanied by

any injury to a person or other property." The message is clear: *Invo Florida* and *First Equity*

remain are the law of Florida.

More recently, in *City of Coral Gables Retirement System v. UBS Financial

Services, Inc.*, Case No. 04-22539-CIV-Martinez, the Court entered an order remanding the case

to State Court, a copy of which is attached as Exhibit A. The issue in that case was the same as

is presented in the pending motion. In that case, the Court held that:

> The fiduciary duty that a stockbroker owes to its clients is well
> established under Florida law. (Citations omitted).

*    *    *

10

Because *Indemnity* established that the economic loss rule does not automatically bar tort claims that stem from the same conduct that breached the contract, because the fiduciary duty owed by a securities broker to his client is well-established under Florida law, and because public policy might dictate that an investor be permitted to sue his securities broker for breach of fiduciary duty, there is no persuasive indication that the Florida Supreme Court would disagree with *First Equity*.

Accordingly, the law of Florida is that the economic loss rule does not bar a claim for breach of fiduciary duty, at least in the context of this case, even where a contract exists between the parties.

## C.      In any event, the fiduciary duties exist whether or not a contract is present.

The economic loss rule does not apply, in any event, where the duties arise independently from the contract. *Indemnity Insurance*, 891 So.2d at 538.  For example, in *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla.1996), the Florida Supreme Court stated:

The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract.

*Id.* at 1239 (citations omitted).

As pointed out above, the fiduciary duties that are at the heart of this case arise, not from a contract, but from the statutory scheme, specifically Chapter 112, Florida Statutes, the Code, and ERISA.  Therefore, the claim for breach of fiduciary duty does not arise out of the contract, but arises independently out of the applicable statutes.  As a result, the economic loss rule does not apply in this situation.

11

## CONCLUSION

The Defendant's motion to dismiss should be denied.  In the alternative, Plaintiff should be given leave to file an amended complaint.

*Attorneys for Plaintiff*

**PAYTON & CARLSON, P.A.**

By: _Curtis Carlson_
        Curtis Carlson
        Florida Bar No. 236640
        1200 Suntrust International Center
        One Southeast Third Avenue
        Miami, Florida 33131
        Telephone: 305.372.3500
        Facsimile: 305.372.8265

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by United States mail this _11_ day of April, 2005 to Richard Davis, Foley & Lardner LLP, 777 South Flagler Drive, Suite 901 – West Tower, West Palm Beach, Florida 33401 and James Landis, Foley & Lardner, LLP, 100 North Tampa Street, Suite 2700, Tampa, Florida 33602.

By: _Curtis Carlson_
        Curtis Carlson

12

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division



FILED by _____ D.C.

FEB 2 8 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

**Case Number: 04-22539-CIV-MARTINEZ**

CITY OF CORAL GABLES RETIREMENT
SYSTEM,

     Plaintiff,

vs.

UBS FINANCIAL SERVICES, INC., f/k/a
Paine Webber, Inc., ALDO CEASER BUSOT;
and FLORENCIO OTTO BUSOT,

     Defendants.

_____/

**CLOSED
CIVIL
CASE**

## ORDER REMANDING CASE TO STATE COURT

THIS CAUSE came before the Court upon Plaintiff's Motion to Remand to State Court
**(D.E. No. 8)**, filed on **November 1, 2004**. Plaintiff City of Coral Gables Retirement System
("Retirement System") is a subdivision of the city of Coral Gables. (D.E. No. 1 at 8
(Complaint.)). Retirement System filed suit in the Circuit Court of the 11th Judicial Circuit in
and for Miami-Dade County, Florida against Defendants UBS Financial Services, Inc. ("UBS"),
formerly known as PaineWebber ("PaineWebber"), and Aldo Ceaser Busot and Florencio Otto
Busot ("the Busots"). (D.E. No. 1 at 8 (Complaint.)). Jurisdiction in state court was based on
the Busots, who are Florida residents. (D.E. No. 1 at 8 (Complaint.)).

In its Complaint[1], Retirement System alleged that PaineWebber, a securities firm,
breached its contract with Retirement System, and that the Busots, employees of PaineWebber

---

[1]A federal court should determine whether a case should be remanded based on the pleadings at the time of
the removal. Crowe, 113 F.3d at 1538. Accordingly, Retirement System's Amended Complaint, filed December 13,
2004, is not considered for present purposes. (D.E. No. 30).



who were assigned to perform its services under the contract, breached the fiduciary duty owed to Retirement System. (D.E. No. 1 at 8 (Complaint.)). On October 6, 2004, UBS filed a notice of removal of the case to the District Court for the Southern District of Florida, alleging that the Busots had been fraudulently joined to defeat diversity jurisdiction. (D.E. No. 1 at 2). On November 1, 2004, Retirement System moved for remand to state court, arguing that it stated a valid claim for breach of fiduciary duty against the Busots under Florida law. (D.E. No. 8 at 3).

In a removal case alleging fraudulent joinder, the removing party has the burden of proving either (1) that there is no possibility the plaintiff can establish a cause of action against the resident defendant, or (2) that the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). Here, UBS does not allege that Retirement System has fraudulently pled jurisdictional facts. Instead, UBS alleges that there is no possibility that Retirement System can establish a cause of action against the Busots in state court. (D.E. No. 1 at 4).

UBS contends that Florida's economic loss rule bars Retirement System's cause of action for breach of fiduciary duty against the Busots because the tort claim is based on the same alleged conduct as the breach of contract claim. (D.E. No. 1 at 4). It cannot be contested that the claims are based on the same conduct.[2] Thus, it is necessary to examine Florida's economic loss rule to determine whether an exception exists for a breach of fiduciary duty cause of action in the securities context when the alleged breach of fiduciary duty is based on the same actions as the

_____

[2]In Retirement System's Compliant, the breach of fiduciary duty count alleges that "PaineWebber, A. Busot, and O. Busot owed the fiduciary duties Plaintiff set forth in paragraphs 7, 8, and 9 above." (D.E. No. 1 at 8 (Complaint)). Those paragraphs refer to "express terms" and "wording of the Consulting Agreement." (D.E. No. 1 at 8 (Complaint)).

alleged breach of contract.

In Florida Power & Light Co. V. Westinghouse Electric Corp., 510 So. 2d 899 (Fla. 1987), the Florida Supreme Court determined that a purchaser of goods could not seek damages in tort for the failed performance of a product in the absence of personal injury or property damage other than the allegedly defective goods. Id. at 901. The court reasoned that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process, and these parties should not be allowed to circumvent the contractual agreement by making a claim for economic loss in tort, in effect, seeking to obtain a better bargain than originally made. Id.

In AFM Corp. v. Southern Bell Telephone and Telegraph Co., 515 So.2d 180 (Fla. 1987), the court extended its Florida Power decision to bar purchasers of services from seeking damages in tort unless the breach of contract is accompanied by additional conduct that amounts to an independent tort. Id. at 181. For many years, courts interpreted the economic loss rule to bar any tort claim that was not completely separate and independent from the breach of contract claim. See Interstate Securities Corp. v. Hayes Corp., 920 F.2d 769, 773 (11th Cir. 1991) (applying the AFM decision to bar a claim for breach of fiduciary duty in the securities context). However, the Eleventh Circuit Court of Appeals noted that in applying the economic loss rule under AFM that

> it is unclear under AFM what is required to prove a separate and independent tort. The opinion does not explain whether the plaintiff need merely show that the same actions which resulted in a contractual breach also fulfilled the elements of a tort claim or whether the plaintiff must establish additional behavior by the defendant beyond that which breached the contract that supports a tort claim.

Id. at 776 n.11. The court did not resolve the issue because it was not necessary at the time. Id.

-3-

In <u>Moransais v. Heathman</u>, 744 So.2d 973 (Fla. 1999), the Florida Supreme Court

acknowledged that their "prior pronouncements on the [economic loss] rule have not always been

clear, and accordingly, have been the subject of legitimate criticism and commentary." <u>Id.</u> at

980. In <u>Moransais</u>, a homeowner brought a professional negligence claim against the

engineering firm and individual engineers who negligently inspected plaintiff's home after they

failed to detect and disclose certain defects. <u>Id.</u> at 974-975. The court held that, despite the

existence of a contract, plaintiff's professional negligence claim was not barred by the economic

loss rule. <u>Id.</u> at 983. The court reiterated that, "a tort action will lie for . . . acts . . . independent

from acts that breached the contract." In addition, the court further limited the economic loss

rule by stating that it was never meant to "bar well-established common law causes of action."

<u>Id.</u>

After <u>Moransais</u>, it still remained unclear whether to survive the economic loss rule a

plaintiff needed to show that a well-established tort was committed by the same actions that

breached the contract, or that a well-established tort was committed by actions that were

independent from the acts that breached the contract. In other words, it remained unclear, under

<u>Moransais</u>, whether the tort had to be well-established *and* based on independent acts, or whether

either situation would suffice.

In <u>First Equity Corp. of Florida, Inc. v. Watkins</u>, 24 Fla. L. Weekly D1758 (3d DCA

1999), the court extended the holding in <u>Moransais</u> to allow a claim for breach of fiduciary duty

in the securities context, despite the existence of an underlying contract, because "[b]reach of

fiduciary duty is just such a well-established cause of action in tort." <u>Id.</u> In addition, the court

explicitly stated that the Eleventh Circuit Court of Appeals' decision in <u>Interstate Securities</u>

-4-

could no longer be "regarded as good law" because it was decided at a point when Florida law regarding the economic loss rule was "not entirely clear," prior to Moransais. Id. at n. 3.

The Florida Supreme Court has never clarified whether an exception to the economic loss rule exists for breach of fiduciary duty. If there is no guidance from the highest state court, federal courts are "bound to adhere to the decisions of state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir. 1983). This Court must decide whether there is persuasive indication that the Florida Supreme Court would disagree with the Third District Court of Appeals. If there is no persuasive indication that the Florida Supreme Court would disagree with First Equity, this Court is bound by its holding. Id.

In the past, this Court has gone both ways on this very issue. In Excess Risk Underwriters v. Lafayette Life Ins. Co., 208 F.Supp. 2d 1310 (S.D. Fla. 2002), this Court stated that "[a]bsent controlling authority, this court will not follow the broad dicta of cases like First Equity." Id. at 1318. In contrast, in Crowell v. Morgan Stanley Dean Witter Services, Co., 87 F.Supp.2d 1287 (S.D.Fla. 2000), this Court stated that, "although there is no persuasive indication that the [Florida] Supreme Court would positively affirm the holding in First Equity, there is no persuasive indication that it would hold otherwise." Id. at 1293.

The disagreement between Excess Risk and Crowell is based on the very same difficulty foreseen by the Eleventh Circuit in Interstate Securities. Excess Risk reasoned that a claim for breach of fiduciary duty was automatically barred because the economic loss rule "bars tort claims that are based on actions inextricably intertwined with the acts constituting breach of contract." Excess Risk, 208 F.Supp. 2d at 1318. Crowell, relying on First Equity, reasoned that

-5-

a claim for breach of fiduciary duty was not automatically barred because breach of fiduciary duty in the securities context is a well-established tort. Crowell, 87 F.Supp.2d at 1293. Thus, Crowell, did not require that the plaintiff establish additional behavior by the defendant beyond that which breached the contract. Id.

Most recently, in Indemnity Insurance Co. of North America v. American Aviation, Inc., 29 Fla. L. Weekly S815 (Fla. 2004), the Florida Supreme Court has enunciated that *two* situations exist in which a plaintiff is permitted to recover in tort, "One involves torts committed independently of the contract breach...*Another* situation involves cases...in which...public policy dictates that liability not be limited to the terms of the contract." Thus, the Eleventh Circuit's dilemma is solved.

Although Retirement System did not allege additional behavior beyond that which breached the contract to support the breach of fiduciary duty claim, Indemnity instructs that the claim is not automatically barred. The question remains as to whether the Florida Supreme Court would find that public policy dictates that the claim be allowed.

The fiduciary duty that a stockbroker owes to its clients is well established under Florida law. Ward v. Atlantic Security Bank, 777 So.2d 1144, 1147 (Fla. 3d DCA 2001) (citing Gochnauer v. A.G. Edwards & Sons, Inc., 810 F.2d 1042, 1049 (11th Cir. 1987)). These duties include (1) the duty to recommend [an investment] only after studying it sufficiently to become informed as to its nature, price, and financial prognosis; (2) the duty to perform the customer's orders promptly in a manner best suited to serve the customer's interests; (3) the duty to inform the customer of the risks involved in purchasing or selling a particular security; (4) the duty to refrain from self-dealing; (5) the duty not to misrepresent any material fact to the transaction; and

-6-

(6) the duty to transact business only after receiving approval from the customer. <u>Id.</u>

In <u>Moransais</u>, public policy dictated that the Plaintiff homeowner be permitted to bring a cause of action for professional negligence against the Defendant home inspector, despite the existence of a contract. <u>Moransais</u>, 744 So.2d at 974-75, 983. The court explained:

> While the parties to a contract to provide a product may be able to protect themselves through contractual remedies, we do not believe the same may be necessarily true when professional services are sought and provided. Indeed, it is questionable whether a professional, such as a lawyer, could legally or ethically limit a client's remedies by contract in the same way that a manufacturer could do with a purchaser in a purely commercial setting.

<u>Id</u> at 983. Similarly, it is questionable whether a stockbroker could legally or ethically limit a client's remedies by contract. Most stockbrokers and their clients enter some form of contractual agreement. The stockbroker should not be able to eliminate his well-established fiduciary duties to his client merely by placing them into the contract.

In addition, if

> a stockbroker misrepresents certain investments, 'churns' the investor's account to generate excessive commissions, or engages in acts of self-dealing, the stockbroker should face liability in contract, tort, or both. Allowing the economic loss doctrine to bar tort actions in these situations encourages wrongful conduct because the wrongdoer faces only a minimal risk--the possibility of paying compensatory damages. This application of the doctrine wrongly extends its protections to classes of individuals never intended to reap its benefits.

<u>Medalie v. FSC Securities Corp.</u>, 87 F. Supp.2d 1295, 1304 n.6 (S.D.Fla. 2000) (citing James G. Dodrill II, <u>Interstate Securities Corp. v. Hayes Corp.: Should the Economic Loss Doctrine Apply to Actions Against Fiduciaries?</u>, 47 U.Miami.L.Rev. 1193, 1209 (1996) (citing Michael A. Hanzman, <u>Interstate Securities Corporation v. Hayes Corporation: An Unprecedented and Improper Expansion of Florida's "Economic Loss" and "Independent Tort" Rules</u>, Fla.B.J., Apr.

-7-

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B005580000... 2/18/2005

1992, at 44-45)).

Because <u>Indemnity</u> established that the economic loss rule does not automatically bar tort claims that stem from the same conduct that breached the contract, because the fiduciary duty owed by a securities broker to his client is well-established under Florida law, and because public policy might dictate that an investor be permitted to sue his securities broker for breach of fiduciary duty, there is no persuasive indication that the Florida Supreme Court would disagree with <u>First Equity</u>. Therefore, this Court is bound by <u>First Equity</u>. In other words, there is a possibility[3] that the Florida Supreme Court would hold that an exception to the economic loss rule exists for a breach of fiduciary duty cause of action in the securities context when the alleged breach of fiduciary duty is based on the same actions as the alleged breach of contract. UBS has not met its burden to establish that the Busots were fraudulently joined because it has failed to prove that there is no possibility that Retirement System can establish a cause of action against the Busots under Florida law. Therefore, it is hereby:

**ORDERED AND ADJUDGED** that

1.      Plaintiff's Motion to Remand to State Court **(D.E. No. 8) is GRANTED.** *This* case is REMANDED to the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida. The Clerk of the Court is hereby directed to take all necessary steps and procedures to effect the expeditious remand of the above-styled caption.

---

[3]Any possibility favors remand. <u>See</u> <u>Crowe</u>, 113 F.3d at 1539 (citing <u>Parks v. The New York Times Co.</u>, 308 F.2d 474 (5th Cir. 1962)(noting that in fraudulent joinder cases that, "doubtful issues of law due to absence of definite pronouncements by the state supreme court are to be tried in the court having original jurisdiction of the case and are not to be determined in removal proceeding.")).

-8-

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B005580000...   2/18/2005

2.   This case is CLOSED. The Clerk is directed to deny all pending motions as moot.

DONE AND ORDERED in Chambers at Miami, Florida, this 28 day of February, 2005.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Klein
All Counsel of Record
Clerk of the Court for the 11th Judicial Circuit in and for Dade County, Florida

-9-