UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20530-CIV-ALTONAGA/Turnoff

CITY OF CORAL GABLES
RETIREMENT SYSTEM,

    Plaintiff,
vs.

INVESCO INSTITUTIONAL (N.A.), INC.,

    Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS

**THIS CAUSE** came before the Court on Defendant, Invesco Institutional (N.A.), Inc.'s ("Invesco['s]") Motion to Dismiss **(D.E. 9)**, filed on March 17, 2005; and Invesco's Motion to Stay Discovery **(D.E. 12)**, filed on March 25, 2005. The Court has reviewed the written submissions of the parties, the relevant portions of the record, and applicable law.

### I. BACKGROUND

The Complaint in this case was filed by Plaintiff, City of Coral Gables Retirement System (the "Retirement System"), in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida on January 21, 2005. The case was removed by Invesco on February 23, 2005, pursuant to 28 U.S.C. §§ 1332, 1441 (D.E. 1). In the Complaint, the Retirement System alleges two counts against Invesco: (1) breach of contract; and (2) breach of fiduciary duty, related to Invesco's October 2001 purchase of approximately $200,000 in Enron Corp. ("Enron") stock for the Retirement System's investment portfolio. In the present Motion (D.E. 9), Invesco moves to dismiss both counts of the Complaint.

The following allegations are found in the Complaint. The Retirement System is a public pension fund, and Invesco provides investment management services to public pension funds. Prior to 2000, the Retirement System and Invesco entered into an agreement (the "Management Agreement"), in which Invesco agreed to serve as an investment manager for the Retirement System.[1] The Management Agreement provides that Invesco shall make investments that it "in its sole discretion" determines to be in the Retirement System's "best interests." (Management Agreement ¶1). The parties also orally agreed that Invesco would adhere to purchasing what are known as "Large Cap Value stocks."

The Management Agreement also contains an exculpatory clause, which states that Invesco and its employees "shall not be liable for any damages with respect to any matter in connection with this agency, except for gross or willful misconduct by Agent [Invesco]. Agent shall have no liability in connection with any act taken or omitted in good faith, and Principal [the Retirement System] agrees to hold Agent harmless from all liabilities and expenses incurred in connection herewith." (Management Agreement ¶ 4).

Prior to October 2001, Invesco had purchased 10,130 shares of Enron in the Retirement System's account at $48.69 and $34.35 per share. On October 30, 2001, Invesco purchased another 19,000 shares of Enron for $11.01 each, for a total purchase price of $210,330. According to the Complaint, the new purchase of Enron stock was unsuitable for the Retirement System, was not in the best interests of the Retirement System, and was reckless at the time it was done, due to the

---

[1] In its Response to Invesco's Motion to Dismiss, the Retirement System states, in a footnote, that the Management Agreement is not between the Retirement System and Invesco. This allegation is not made in the Complaint, and therefore the Court does not consider it.

financial situation of Enron. On November 8, 2001, Enron announced that it had overstated its earnings over the past four years by $586 million and was responsible for $3 billion in obligations that had never been reported to the public. Upon these disclosures, the price of Enron stock fell to $8.41 per share.

On November 9, 2001, a company named Dynergy offered a "rescue plan" for Enron and proposed a buy-out of all of Enron for $10 billion in stock, and on November 14, 2001, the price of Enron stock closed at $10. On November 29, 2001, however, after the price of Enron stock had collapsed, Invesco sold all of the Retirement System's Enron stock for $0.40 per share, resulting in a loss in excess of $200,000 for the Retirement System.

## II. LEGAL ANALYSIS

### A. Invesco's Motion to Dismiss

#### 1. *The Standard on a Motion to Dismiss*

For purposes of a motion to dismiss, the court must accept the allegations of the complaint as true. *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc). Moreover, the complaint must be viewed in the light most favorable to the plaintiff. *St. Joseph's Hosp., Inc. v. Hosp. Corp. of America*, 795 F.2d 948, 953 (11th Cir. 1986). To warrant a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Nonetheless, to survive a motion to dismiss, a plaintiff must do more than merely label his or her claims. *Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996). Thus, dismissal of

a complaint or a portion thereof is appropriate when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

In deciding a motion to dismiss, a court may only examine the "four corners" of the complaint and any matters incorporated therein, and not matters outside the complaint, without converting the motion to dismiss into a motion for summary judgment. *See Crowell v. Morgan Stanley Dean Witter Servs., Co., Inc.*, 87 F. Supp. 2d 1287, 1290 (S.D. Fla. 2000); *Blount v. Sterling Healthcare Group, Inc.*, 934 F. Supp. 1365, 1368 (S.D. Fla. 1996). However, a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment "if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. 'Undisputed' in this context means that the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted).

Because the Management Agreement is central to the case, is attached to the Complaint, and its authenticity is unchallenged, the Court has considered it in deciding Invesco's Motion.

    2.    ***The Retirement System has stated a claim for breach of contract and breach of fiduciary duty.***

In Count I, the Retirement System alleges that Invesco breached the Management Agreement. The Retirement System contends that Invesco failed to invest the Retirement System's money consistent with the objectives, risk tolerances, and approach stated in the Management Agreement and in other oral agreements. Invesco argues that paragraph 4 of the Management Agreement allows suits only for actions that constitute "gross or willful misconduct" by Invesco. According to Invesco, because the Retirement System does not allege facts that rise to this standard, the breach of contract

CASE NO. 05-20530-CIV-ALTONAGA/Turnoff

claim must be dismissed.

The Retirement System argues, however, that the exculpatory clause in Paragraph 4 of the Management Agreement is unenforceable under Florida law. "Generally, Florida law disfavors exculpatory clauses. While a release need not refer expressly to 'negligence' to bar a negligence claim, it must clearly and unequivocally include negligence within its scope." *Sunrise Village Mobile Home Park v. Phillips & Jordan, Inc.*, No. 94-0101-CIV-HURLEY, 1996 U.S. Dist. LEXIS 22374, at *4 (S.D. Fla. 1996) (citations omitted). In *Sunrise Village*, for example, the court concluded that a clause releasing a party "from all claims of whatever nature" was unenforceable because "general language in a release agreement, such as a reference to 'any and all claims,' is not sufficient to constitute the sort of clear and unequivocal reference necessary to include negligence claims within the ambit of a release." *Id.* at *8-9.

In this case, the Management Agreement does not seek to exclude liability for "any and all claims" or for "all claims of whatever nature." Rather, the Management Agreement seeks to hold Invesco harmless except for gross or willful misconduct. Such exculpatory language, on its own, is not against public policy.

However, because the Retirement System is a public retirement system, the Management Agreement is also subject to the Florida Protection of Public Employee Retirement Benefits Act, Fla. Stat. §112.60, *et seq.* (the "Retirement Benefits Act"). According to the Retirement Benefits Act, a retirement system "board in performing its investment duties shall comply with the fiduciary standards set forth in the Employee Retirement Income Security Act of 1974 [ERISA] . . . ." ERISA imposes a "prudent person" standard. *See* 29 U.S.C. § 1104 (a)(1)(B) ("a fiduciary shall discharge

his [or her] duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.").

According to Section 19-32(29) of the Coral Gables City Code (the "Code"), a "money manager" is a person or entity appointed by the retirement system board "for the purpose of investing and reinvesting the corpus, income, contributions and other monies received by the system. Section 19-41 of the Code states that money managers are fiduciaries of the retirement system. Section 112.66(4), Florida Statutes, states that "[a]ny provision in a legal agreement, contract, or instrument which purports to relieve a fiduciary of a retirement system or plan from responsibility or liability is void as being against public policy." The Management Agreement purports to relieve Invesco, a fiduciary of the Retirement System, from liability. By application of Section 112.66(4), Fla. Stat., Paragraph 4 of the Agreement is therefore unenforceable.

The Retirement System alleges that the October 30, 2001 purchase of Enron stock "was completely unsuitable for the Retirement System, was not in the best interests of the Retirement System, and was reckless at the time it was done." The Retirement System also alleges that Invesco had warnings of Enron's financial situation and ignored the warnings by making the October 30, 2001 purchase. The Retirement System has accordingly stated a claim for breach of contract.

### 3. *The breach of fiduciary duty claim is not barred by the economic loss rule.*

In Count II, the Retirement System alleges that Invesco breached its fiduciary duty to the Retirement System. Invesco contends that the Retirement System's claim for breach of fiduciary

duty arises from the same facts that underlie the Retirement System's claim for breach of contract; therefore, the economic loss rule bars recovery for this tort claim.

"The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indem. Ins. Co. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004) (footnote omitted). In Florida, the economic loss rule provides that "when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss." *Id.* at 542.

There are exceptions to the rule, however. "Intentional tort claims such as fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof of intent generally remain viable . . . ." *Id.* at 543 n.3. Furthermore, other exceptions "such as for professional malpractice, fraudulent inducement, and negligent misrepresentation, or freestanding statutory causes of action, still apply." *Id.* at 543. Finally, "some courts have extended the exception . . . to causes of action for breach of fiduciary duty, even if there was an underlying oral or written contract." *Id.* at 542 (citations omitted).

The Retirement System's claim for breach of fiduciary duty "is one of those well-established torts" which remains viable, "even if there is an underlying oral or written contract." *Invo Fla., Inc. v. Somerset Venturer, Inc.*, 751 So. 2d 1263, 1267 (Fla. 3d DCA 2000); *see also City of Coral Gables Retirement System v. UBS Financial Services, Inc.*, Case No. 04-22539-CIV-MARTINEZ at 8 (S.D. Fla. Feb. 28, 2005) ("Because *Indemnity* established that the economic loss rule does not automatically bar tort claims that stem from the same conduct that breached the contract, because

CASE NO. 05-20530-CIV-ALTONAGA/Turnoff

the fiduciary duty owed by a securities broker to his client is well-established under Florida law, and because public policy might dictate that an investor be permitted to sue his securities broker for breach of fiduciary duty, there is no persuasive indication that the Florida Supreme Court would disagree with *First Equity* [which found that a breach of fiduciary duty claim is not barred by the economic loss rule]."). Dismissal of this count by virtue of the economic loss rule is therefore inappropriate.

### III. CONCLUSION

For all the reasons stated above, it is

**ORDERED AND ADJUDGED** as follows:

(1) Defendant, Invesco Institutional (N.A.), Inc.'s Motion to Dismiss **(D.E. 9)** is **DENIED**.

(2) Defendant, Invesco Institutional (N.A.), Inc.'s Motion to Stay Discovery **(D.E. 12)** is **DENIED AS MOOT**.

(3) Defendant, Invesco Institutional (N.A.), Inc., shall file an answer to the Complaint on or before **May 23, 2005**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 2 day of May, 2005.

_____
CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Magistrate Judge William C. Turnoff

Counsel of record